IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-02893-MSK-KMT

MITSUYE C. TADEHARA,

       Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

       Defendant.

## OPINION AND ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT

**THIS MATTER** comes before the Court on the Motion for Partial Summary Judgment **(#75)** filed by Defendant State Farm Mutual Automobile Insurance Company ("State Farm"), to which Plaintiff Mitsuye C. Tadehara responded **(#78)**, and State Farm replied **(#80)**. Having considered the same, the Court **FINDS** and **CONCLUDES** the following.

### I.   Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

### II.   Issue Presented

This dispute concerns benefits owed under an insurance policy. Plaintiff claims benefits pursuant to the Uninsured/Underinsured Motorist ("UIM") coverage of the automobile insurance policy issued to her by State Farm. State Farm moves for summary judgment on one of Plaintiff's two claims.

### III.   Material Facts

The Court has reviewed all of the parties' submissions. For purposes of this Motion

only, the Court construes all disputed facts most favorably to the Plaintiffs. Viewing the facts in such light, the material facts are as follows.

On November 14, 2006, Plaintiff was involved in an automobile accident in which her vehicle was struck from behind by a vehicle driven by Norman Schultz. At the time, Plaintiff was insured under an automobile policy issued by State Farm (the "Policy"). The Policy contains a Medical Payments Coverage provision with a per person limit of $25,000, UIM coverage with a limit of $100,000 per person, $300,000 per accident, and a provision for non-duplication of coverage. It reads, in pertinent part:

> We will not pay under Uninsured Motor Vehicle Coverage any damages:
>
> 1. that have already been paid to or for *the insured* for *bodily injury* under Liability Coverage of any policy issued by *the State Farm Companies* to *you* or any *resident relative*; and
>
> 2. that have already been paid as expenses under Medical Payments Coverage of this policy, the medical payments coverage of any other policy, or other similar vehicle insurance.

Policy, Exh. C to Def.'s Mot. for Summ. J., #75-3.

After the accident, Plaintiff was seen at a hospital emergency room where, according to the records, she did not complain of lower back pain, and no x-rays were taken of her back. Two days later, on November 16, 2006, Plaintiff called State Farm and reported the accident and that she had numbness in her hand. On November 29, 2006, a State Farm representative reviewed the police report and determined that Mr. Schultz was responsible for the accident and Plaintiff was not at fault.[1] Photos taken in the accident investigation show that the damage to Plaintiff's car was minimal and the reported repair cost was $927.

---

[1] There is no evidence that State Farm has ever taken the position that Plaintiff had any fault in the accident.

Around December 16, 2006, Plaintiff had a separate incident in which she bent over to try on shoes and her back "went out 100%" and her right leg went numb.[2] On December 27, 2006, Plaintiff contacted State Farm again, stating she was having back problems as a result of the accident and had questions about chiropractors. She was informed that she could see the chiropractor and that the provider should bill State Farm. State Farm obtained a Medical Authorization and list of medical providers from Plaintiff in February 2007 and began requesting medical records.

State Farm discussed Plaintiff's treatment with Plaintiff several times through early 2007. Around April 2007, State Farm also decided to obtain Plaintiff's prior medical records to determine whether she had any pre-existing conditions. In December 2007, State Farm contacted Plaintiff for an injury update and treatment status; at the time, Plaintiff said she was still seeing the chiropractor and had begun seeing a psychotherapist for treatment for her fear of driving. In February 2008, Plaintiff indicated that most of her treatment was complete but that she expected to continue to see a chiropractor. State Farm continued to pay Plaintiff's medical bills.

State Farm contacted Mr. Schultz's insurer, Viking Insurance Company ("Viking"), various times in early 2007 to request liability information and to preserve subrogation rights. Viking indicated that it had concerns about whether Plaintiff's medical condition was actually caused by the accident.

Plaintiff filed a lawsuit against Mr. Schultz in May 2008. In January 2009, Plaintiff's attorney advised State Farm of the lawsuit and requested a copy of the Policy to produce in the civil action. In March 2009, Plaintiff's attorney informed State Farm that Plaintiff was pursuing

---

[2]Plaintiff informed State Farm of this event around March 2007.

a UIM claim and would send a letter of representation.

Upon receipt of the letter of representation, State Farm reviewed the claim and agreed that Mr. Schultz was 100% at fault for the accident. The record of the review indicates that Plaintiff was close to settling her claim against Mr. Schultz for $20,000, which was less than Mr. Schultz's policy limit of $25,000. It appears that at the time State Farm was aware that Plaintiff had been "jobless" since August 2008. The record also shows that Plaintiff had previously made claims for Personal Injury Protection ("PIP") benefits for injuries incurred in other automobile accidents; an internal request for those files was made. In late March 2009, State Farm sent Plaintiff a letter requesting an updated Medical Authorization and providing other information about her benefits.

On April 9, 2009, State Farm consented to Plaintiff settling with Mr. Schultz for $20,000 and agreed to waive its subrogation rights against Mr. Schultz. State Farm also agreed to credit Mr. Schultz's policy for the full liability limit of $25,000 in determining its own UIM benefits. Around the same time, State Farm again requested the updated Medical Authorization. State Farm had several contacts with Plaintiff's attorneys in June and July 2009 and continued to request the updated authorization and list of medical providers.

The next contact from Plaintiff's attorneys was a letter dated July 13, 2009, demanding $75,000 in UIM benefits. The letter stated that after the accident, Plaintiff had been on short-term, then long-term disability, but that when she attempted to return to work her position had been eliminated due to downsizing. Plaintiff's attorney argued that,"[e]ven without including the loss of income from her termination [Plaintiff] had over $80,000 in economic damages from November 14, 2006 to her date of termination from employment." Exh. P to Def.'s Mot. for Summ. J., #75-16. The letter further stated that Plaintiff's medical costs incurred

were $24,000 and an additional $10,000 in medical expenses were anticipated. Plaintiff's attorney did not include any wage information or other supporting documentation regarding Plaintiff's alleged economic damages and lost income, although documentation from Plaintiff's applications for disability and other medical records were provided.[3]

Upon receipt of the demand letter, Claim Representative Chris Prudhomme prepared an evaluation of Plaintiff's UIM claim. He reviewed Plaintiff's medical records to prepare a summary of Plaintiff's medical treatment. He then prepared an Injury Evaluation Report ("IER"). The IER noted that State Farm had paid $23,157.81 under Plaintiff's Medical Payments Coverage, which was deducted from the UIM coverage, as was the $20,000 Plaintiff received from Mr. Schultz. Mr. Prudhomme also noted that there was no documentation accompanying the settlement demand to enable him to include an amount for the evaluation of economic loss. Mr. Prudhomme did not disregard, apportion, or reduce any damages due to prior accidents or injuries or to an intervening accident or other causation issues. Nonetheless, based on the evidence from the medical records, the fact that the damage to the vehicle was minimal, that Plaintiff had settled her claim against Mr. Schultz for less than his policy limits, that there were still benefits remaining under Plaintiff's Medical Payments Coverage, and Plaintiff had made prior injury claims with similar complaints, Mr. Prudhomme determined that Plaintiff had been fully compensated.

Mr. Prudhomme informed Plaintiff's lawyer that Plaintiff would have to show damages of at least $25,000 to be entitled to UIM benefits. He stated that State Farm considered

---

[3]It appears that at that time, Plaintiff had a vocational assessment report regarding her purported damages, including future losses resulting from the accident, which had been prepared for her litigation with Mr. Schultz. This report, however, was not given to State Farm until discovery during this litigation.

Plaintiff's losses to be fully compensated by the settlement with Mr. Schultz and by the payments under the Medical Payments Coverage. The evidence indicates that Plaintiff's attorney declined to discuss the merits of the case with Mr. Prudhomme. In a follow up letter regarding the issue, Mr. Prudhomme informed Plaintiff that State Farm would consider any further information she might wish to provide.

Plaintiff thereafter initiated this lawsuit against State Farm, asserting breach of contract, common law bad faith, and, after amending her complaint, a statutory claim under C.R.S. §§10-3-1115 and 1116. The common law bad faith claim has been dismissed.

### IV.   Standard of Review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

When the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

When the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

### V.   Analysis

State Farm seeks partial summary judgment on Plaintiff's statutory claim. This claim asserts a violation of C.R.S. § 10-3-1115(1)(a), which provides: "A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." In a somewhat circular fashion, the statute goes on to explain that an insurer's action is "unreasonable" if "the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." C.R.S. § 10-3-1115(2). There is little case law interpreting this provision, which was enacted in 2008. However, some

guidance can be gleaned from cases addressing the common law tort of bad faith breach of an insurance contract, which has as elements that (1) the insurer acted unreasonably under the circumstances, and (2) the insurer either knowingly or recklessly disregarded the validity of the insured's claim. *Goodson v. Am. Standard Ins. Co.*, 89 P.3d 409, 415 (Colo. 2004).

In evaluating the first element, Colorado courts have established the following principles:

> The reasonableness of the insurer's conduct must be determined objectively. Thus, if a reasonable person would find that the insurer's justification for denying or delaying payment of a claim was "fairly debatable" (i.e., if reasonable minds could disagree as to the coverage-determining facts or law), then this weighs against a finding that the insurer acted unreasonably. This is true even if the insurer's defense ultimately proves to be unsuccessful, because resort to a judicial forum does not necessarily evince bad faith or unfair dealing, regardless of the outcome of the proceeding. Thus, when an insurer maintains a mistaken belief that a claim is not compensable, it may still be within the scope of permissible challenge, even if the insurer's belief turns out to be incorrect.

*Sanderson v. American Family Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo.App. 2010) (citations omitted). Determining reasonableness under the circumstances is ordinarily a question of fact for the jury but in appropriate circumstances may be decided as a matter of law. *Bankr. Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 524 (Colo. App. 2008).

State Farm first argues that Plaintiff's claim under section 1115 cannot be proven as a matter of law because "a claim for benefits owed" refers to only an undisputed, fixed, or liquidated amount, such as that reflected in a judgment. Because the amounts owed to Plaintiff were (and continue to be) in dispute, State Farm argues that its failure to pay Plaintiff pursuant to her demand letter does not fall within the scope of this provision.

State Farm provides no legal authority to show that Colorado courts are likely to give this provision the interpretation that it suggests. The authorities cited above indicate that the determination of reasonableness is highly fact-dependent. Even if State Farm's reading of the

statute is what the General Assembly intended, there could be disputes regarding whether the claim involves a fixed sum, with the insured asserting that the sum is clearly fixed and owed and the insurer maintaining that the amount owed is disputed. Whether the insurer's position is reasonable, therefore, would still need to be examined based on the facts and circumstances of the case. Thus, based on the undisputed facts, State Farm is not entitled to a judgment as a matter of law.

State Farm next contends that, based upon the undisputed facts, the Plaintiff cannot establish that State Farm lacked a reasonable basis for denying Plaintiff's claim for benefits in excess of those obtained by settlement and in payment for medical treatment. In particular, the Plaintiff did not provide State Farm with any proof of lost income and other economic losses to justify payment of additional benefits.[4] State Farm also argues that other factors relied upon by Mr. Prudhomme, such as the fact that Plaintiff settled for less than Mr. Schultz's policy limits, also provided a reasonable basis for the decision.

Plaintiff does not dispute that at the time she made her demand, she did not provide any supporting evidence for any economic losses.[5] However, she argues that State Farm acted unreasonably by failing to request further specific information regarding her damages and

---

[4]According to the demand letter from Plaintiff's attorney, Plaintiff determined her medical expenses had been approximately $24,000, which State Farm had paid, and her anticipated future expenses would be $10,000. Given that she obtained $20,000 in settlement from Mr. Schultz, and still had some benefits remaining in her Medical Payments Coverage, there appears to be no dispute that Plaintiff's medical costs were adequately compensated. The issue, then, concerns the unspecified economic damages and lost wages, which she contends were the result of the accident and her resulting injuries

[5]Plaintiff asserts that the information accompanying the letter included her application for disability benefits, which could have provided some of this information. That document, however, has not been submitted as evidence with the briefs and so the Court does not consider it for the purposes of the summary judgment analysis.

otherwise inadequately investigating her entitlement to benefits.[6] *See Brodeur v. American Home Assur. Co.*, 169 P.3d 139, 147 n. 7 (Colo. 2007) (insurer's bad faith can occur in the unreasonable refusal to investigate a claim or to gather facts).

The disputed issue, then, is what would a reasonable insurer do upon receipt of a demand letter with little supporting proof of loss. The reasonableness of an insurer's conduct "is measured objectively based on industry standards." *American Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 343-45 (Colo. 2004) (expert testimony is not always required to determine the reasonableness of an insurer's investigation into the underlying events of an automobile insurance claim; jurors' own knowledge and/or statute can inform determination of standard of care).

Both parties have tendered expert opinions as to this issue.[7] No challenge has been made

---

[6] In her Amended Complaint, Plaintiff set forth the following as grounds for her allegation that State Farm did not adequately investigate her claim: (1) failing to investigate the circumstances of the "prior" accident (apparently an accident in 2000); (2) failing to investigate the circumstances of the 2006 accident involving Mr. Schultz; (3) failing to investigate and review Plaintiff's medical information; (4) failing to interview any of Plaintiff's medical providers; (5) failing to interview the Plaintiff; (6) failing to read Plaintiff's deposition in the Schultz case, in which she was able to differentiate the injuries she received in the 2000 accident and the 2006 accident. Amended Complaint, #63, ¶ 47. In its Motion for Partial Summary Judgment, State Farm argues that the undisputed evidence shows that it adequately investigated the 2006 accident, that investigation of the 2000 accident was unnecessary since the denial was not based on any apportionment or pre-existing injury, that there is extensive evidence showing State Farm reviewed Plaintiff's medical information, that there is no evidence that State Farm would have learned anything new or different from interviewing Plaintiff's medical providers, that State Farm interviewed Plaintiff numerous times, and that State Farm was unaware of Plaintiff's deposition at the time it made its decision. Plaintiff does not respond to this argument and, reviewing the evidence presented, the Court concludes that State Farm has established that these allegations are not substantiated and do not establish that its investigation was inadequate.

[7] After Plaintiff filed her response brief, she filed a supplemental response (#79) to which she appended an expert report prepared by Richard Hodges, an attorney. Plaintiff does not identify any specific opinions in the expert report that are material; she simply points to the entire report as grounds to dispute that State Farm's conduct was reasonable. Mr. Hodges opines that State Farm acted unreasonably in denying Plaintiff's claim but his report contains only a

as to the admissibility of this evidence under Fed. R. Evid. 702 or otherwise. Thus, without making any determination as to the admissibility of the proffered expert testimony, it is sufficient to observe that there is a genuine issue of material fact in dispute that will require a trial.

**IT IS THEREFORE ORDERED** that

(1)  State Farm's Motion for Partial Summary Judgment **(#75)** is **DENIED.**

(2)  Within ten days of the issuance of this Order, the parties shall contact the Court's chambers in order to set a Final Pretrial Conference at which time a trial date shall be set.

Dated this 12th day of September, 2011

**BY THE COURT:**

*Marcia S. Krieger*

Marcia S. Krieger
United States District Judge

---

legal analysis of the facts of this case applied to what he considers to be the pertinent legal standard. The Court has some question as to whether such an opinion is admissible. "Generally, an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts." *Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998); *Specht v. Jensen*, 853 F.2d 805, 807-809 (10th Cir. 1988) (admission of legal expert's opinion that defendants' conduct violated the law "allowed the expert to supplant both the court's duty to set forth the law and the jury's ability to apply this law to the evidence."). State Farm also submitted an expert report prepared by Arthur H. Downey, a licensed attorney. It too, contains legal opinions which may fall within the purview of *Specht* and *Okland*. The report was submitted with State Farm's reply brief and also will not be considered. *Hill v. Kemp*, 478 F.3d 1236, 1250 (10th Cir. 2007) (arguments raised for the first time in a reply brief may be disregarded).

Even if the opinions are not admissible, the standard of care is a question of fact to be determined by the jury based upon other evidence presented.